**UNITED STATES of America**

v.

**Rudolph I. LAWSON, Appellant.**

**UNITED STATES of America**

v.

**Diane M. MILLER, Appellant.**

**Nos. 81–2207, 81–2239.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 29, 1982.

Decided July 13, 1982.

---

Douglas Lincoln Beresford, Student Counsel, with whom Steven H. Goldblatt and Samuel Dash, Washington, D. C., were on brief, for Lawson, appellant in No. 81–2207.

Fern Flanagan, Washington, D. C., with whom John A. Shorter, Jr., Washington, D. C., was on brief, for Miller, appellant in No. 81–2239.

Lisa J. Stark, Asst. U. S. Atty., Washington, D. C., with whom Stanley S. Harris, U. S. Atty., and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on brief, for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and McGOWAN, Senior Circuit Judge.

MacKINNON, Circuit Judge:

In a bench trial, heard on a stipulated record relating only to Counts One and

Three of a nine count superseding indictment, appellant Rudolph I. Lawson was convicted of possession of heroin and cocaine with intent to distribute in violation of 21 U.S.C. § 841(a). In the same proceeding, appellant Diane M. Miller was convicted following a bench trial on Count Nine of the same indictment for possession of marijuana in violation of D.C.Code § 33–402. In this appeal Lawson charges that his stipulated trial was the equivalent of a guilty plea, and that the trial court failed before finding him guilty to make the inquiries mandated by Fed.R.Crim.P. 11 when guilty pleas are entered. Lawson also demands that money seized during the police raid that led to his conviction should be returned to him immediately since he claims it is no longer needed as evidence. Miller contends that the evidence was insufficient to support her conviction for possession of marijuana. We affirm the convictions of both appellants.

I

At approximately 10:15 p.m. on April 30, 1981, officers of the District of Columbia Metropolitan Police Department executed a search warrant at Miller's residence at 2112 New Hampshire Avenue, N.W., Apartment 814. (Tr. 23–24). Lawson answered the door when the police arrived. At that time, appellant Miller was in the bathtub. An officer immediately entered the bathroom, told Miller to get dressed, and then directed both appellants to remain in the living room while they searched the apartment. (Tr. 24).

After giving appellants their respective *Miranda* warnings (Tr. 24), Detective Gonzales of the search team asked Lawson where cocaine and heroin was located in the apartment. Lawson stated that the "powder" was all in the bedroom, as was some "eight or nine thousand dollars." (Tr. 26). When "asked if the drugs were his, or the girl's ... Lawson stated that they were all his." (Tr. 26).

On searching the apartment, Detective Penberg of the search team found a packet of cocaine (exhibit 2), a packet of heroin (exhibit 3), and six tinfoil packets of heroin (exhibits 4A–4F) on the top of a dresser in the bedroom. These items were found essentially in the spots indicated by Lawson moments before. Detective Penberg also found a manila envelope containing marijuana (exhibit 5) and a marijuana cigarette (exhibit 6) on the living room coffee table. (Tr. 27). He also found six spoons containing heroin traces (exhibit 7) in a kitchen drawer. (Tr. 26–27). Finally, he found $3,606.00 of United States currency—$1,200 from Lawson's wallet and the remaining amount underneath the mattress in the bedroom—and four handguns. (Tr. 29; R. 13).

The government chemist concluded that exhibit 2, one of the packets seized from the bedroom dresser, contained 6,490 milligrams of cocaine of 63% purity; that exhibit 3, the other packet seized from the bedroom dresser, contained 9,860 milligrams of 23% pure heroin; that exhibits 4A through 4F, the six tinfoil packets seized from the bedroom dresser, contained a total of 4,490 milligrams of 28% pure heroin; that exhibit 5, the envelope seized from the living room coffee table, contained 31,450 milligrams of marijuana; that exhibit 6, the cigarette seized from the coffee table, contained 130 milligrams of marijuana; and that exhibit 7, the spoons seized from the kitchen drawer, contained traces of heroin. (Tr. 21–23).

It was further stipulated that the government's expert in the field of narcotics trafficking would have testified, on the basis of the quantity and purity of the heroin and cocaine in the apartment, that these narcotics were possessed for the purpose of distribution. (Tr. 23–25).

On June 18, 1981, Lawson and Miller were charged in a five count indictment with possession and distribution of heroin and cocaine in violation of 21 U.S.C. § 841(a), and with possession of marijuana in violation of D.C.Code § 33–402. On September 3, appellants filed motions for the return of property and the suppression of evidence. On September 18, a nine count superseding indictment was filed, again charging both appellants with violations of federal and District of Columbia laws relat-

ing to the possession and distribution of narcotics. In addition, appellant Lawson was charged with four weapon-related offenses. (R. 13, counts 5–8). On September 21, upon the oral motion of appellant Miller, the counts of the superseding indictment charging Lawson's weapon offenses were severed from the rest of the indictment. On that same day, the district court, after hearing the arguments of counsel, denied appellants' suppression motion and deferred ruling on the motion for the return of property until the conclusion of the trial.

Lawson then signed a waiver of his right to a jury trial and agreed to a court trial on stipulated evidence on Counts One and Three.[1] The court found Lawson guilty on both counts. Simultaneously, appellant Miller, following a bench trial, was found guilty of possession of marijuana as charged in Count Nine of the superseding indictment.[2]

Lawson was sentenced to twelve years imprisonment, to be followed by a special parole term of three years. Miller was sentenced to two years and fined $1,000. Execution of Miller's prison sentence was suspended, and she was placed on probation for two years. These appeals followed.

## II

Lawson argues that his stipulated trial was the equivalent of a guilty plea, and that the trial court was accordingly mandated by Fed.R.Crim.P. 11 ("Rule 11") to inform him of his rights as though he were pleading guilty, so as to ensure that he knew the full consequences of his decision to stipulate. This contention is not supported by case law and is without merit.

■■■ A defendant entering a guilty plea is entitled to a Rule 11 inquiry to determine if that plea was entered voluntarily and intelligently. *United States v. Brown*, 428 F.2d 1100, 1102 (D.C.Cir.1970). Rule 11 inquiries may also be required if by stipulation or otherwise a defendant has

effectively admitted his guilt and waived trial on all issues. *Id.; United States v. Strother*, 578 F.2d 397 (D.C.Cir.1978); *United States v. Dorsey*, 449 F.2d 1104 (D.C.Cir. 1971). This, however, is not such a case. Lawson claims that by agreeing to a stipulated trial, he effectively admitted his guilt and waived trial on all issues. The record does not support such contention. All that was stipulated to was what the Government's evidence *would have been* had certain witnesses testified. There was *no* stipulation as to the veracity of such testimony or of the witnesses. Nor was there any stipulation that Lawson actually or constructively possessed the narcotics that were found in appellant Miller's apartment. Finally, there was not any stipulation as to intent. It remained after stipulation was entered into, then, for the court to decide on the basis of the stipulated record whether appellant was guilty as charged. It is thus clear that Lawson did *not* waive trial on *all* issues.

In cases where defendants have not admitted guilt and waived trial on all issues, courts have uniformly held that a Rule 11 inquiry is not required. In *United States v. Dorsey, supra*, for example, after a stipulated trial the defendant was convicted of carrying a dangerous weapon. At the earlier suppression hearing, a special police officer testified: that he saw the defendant enter a liquor store to purchase cigarettes; that as the defendant reached for the cigarettes, the officer noticed a revolver in the waistband of his trousers; and that the officer then arrested him and seized the weapon. At trial the defendant agreed to have the officer's testimony incorporated by reference and elected to present no evidence. Noting that the defendant had not stipulated to the crucial element of possession, this Court ruled that the stipulated trial was not equivalent to a guilty plea:

> [Since] the trial stipulations relate to facts which would be of significance only

---

1. The Government agreed to dismiss the remaining counts of the indictment against Lawson at the conclusion of the trial.

2. The Government also agreed to dismiss the remaining counts of the indictment against Miller.

if the court found, on the basis of the special police officer's testimony, that appellant was carrying the weapon ... there was not "an admission by defendant of *all* of the conduct charged to him as a crime." ... That appellant's case appears so weak as to suggest the equivalent of a guilty plea is due to the facts as developed in the special police officer's testimony, not to the stipulations made at trial. 449 F.2d at 1108. (Emphasis added).

Accordingly, Rule 11 procedures were not required.

Similarly, in *United States v. Strother, supra*, this Court concluded that the district court was not required to inquire of the defendant prior to a stipulated trial for possession of an unregistered firearm to determine whether his waiver was voluntary. At the suppression hearing in *Strother*, an officer testified that he executed a search warrant for an apartment and found the defendant and two other persons inside. Upon searching the apartment, the officer found a sawed-off shotgun and ammunition which the defendant said were his. Refusing to apply Rule 11, this Court explained:

> This Court held in *Dorsey* that there was no equivalence to a guilty plea because the defendant had never stipulated to the truth of the officer's testimony, leaving it essential to his conviction that the court find, on the basis of the officer's testimony, the fact of possession, without which the other facts accepted by stipulation would be irrelevant. The close parallels to this case are obvious. Essential to appellant's conviction was that the trial court find the fact of possession. 578 F.2d at 404.

Lawson here has clearly not admitted his guilt or waived trial on all issues. Thus, *Dorsey* and *Strother* support a ruling that the trial court was not required to conduct a Rule 11 inquiry. His appeal on this score is therefore dismissed.

■ Lawson suggests that whether or not he waived trial on all issues, his critical decision to waive his right to a jury trial was made involuntarily and unintelligently, and was therefore impermissibly prejudicial. This argument is likewise without foundation.

Fed.R.Crim.P. 23(a) provides, "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." The transcript and the written waiver reflect that Lawson, his attorney, the Assistant United States Attorney and the presiding judge all signed the "waiver of trial by jury" (R. 14) on September 21, 1981. The execution of Lawson's waiver fully conformed with Rule 23(a)—the attack on the validity of the waiver must therefore be dismissed.

Lawson's request that the money seized during the police raid that led to his conviction be returned to him *immediately* requires little comment. This Court has held in the past that money seized under circumstances analogous to those in the instant case should be delivered to its rightful owner *by the district court* on remand. *United States v. Wilson*, 540 F.2d 1100 (D.C.Cir. 1976); *United States v. Wright*, 610 F.2d 930 (D.C.Cir.1979). The government is not required to return such evidence until the possibility of *all* evidentiary uses and normal appeals are exhausted. Accordingly, we remand the case to the district court to determine the rightful owner of the $3,606.00 seized in the police raid if the government has no further need for the money as evidence.

All issues on appeal being found without basis, Lawson's convictions on Counts One and Three are therefore affirmed.

### III

Miller claims that the evidence was insufficient to support a finding of guilty on the charge of possession of marijuana. Specifically, she argues that her conviction cannot be sustained because she and Lawson jointly occupied the apartment where the marijuana was found and because the narcotics were not within her immediate reach at the time of her arrest. These arguments are utterly unpersuasive.

Possession of a narcotic drug may be either actual or constructive. *United States v. Raper and Childs*, 676 F.2d 841, at 847 (D.C.Cir.1982); *United States v. Staten*, 581 F.2d 878 (D.C.Cir.1975); *United States v. Bethea*, 442 F.2d 790 (D.C.Cir.1971). Constructive possession may be shown through direct or circumstantial evidence of dominion and control over the contraband, *United States v. Raper and Childs, supra; United States v. Staten, supra; United States v. Grayson*, 597 F.2d 1225 (9th Cir.), *cert. denied*, 444 U.S. 873, 875, 100 S.Ct. 153, 157, 62 L.Ed.2d 99, 102 (1979), and may be found to exist where the evidence supports a finding that the person charged with possession was knowingly in a position, or had the right to exercise "dominion or control" over the drug. *United States v. Raper and Childs, supra; United States v. Staten, supra; United States v. Watkins*, 519 F.2d 294, 298 (D.C.Cir.1977).

In the instant case, appellant Miller had lived in the apartment where the marijuana was seized for seven years. (Tr. 40). When the police arrived, she was present in the apartment along with appellant Lawson. The manila envelope containing marijuana and the marijuana cigarette, both seized by the police, were in plain view on the coffee table in the living room when the police arrived.

While it is true that Miller was in the bathtub and did not have any marijuana on her person at the time of the arrest, it is inescapably obvious that she had "dominion and control" over the marijuana, which was openly strewn about (as were a number of other drugs) in *her* apartment. Thus, at the very least she had constructive possession of the marijuana as charged.

Miller's argument that her joint occupancy of the apartment with appellant Lawson [3] somehow absolves her from guilt is far fetched. In a number of cases in the past this Court has sustained narcotics convictions where the premises where the arrest was made were jointly occupied and the narcotics were not within grabbing distance of a particular defendant. In *United States*

*v. Staten, supra*, for example, appellant and a friend were in a one-room apartment when the police executed a search warrant. Inside the apartment were various illicit narcotics, drug paraphernalia, and cash. Specifically, among other items, the police found an envelope containing methylphenadate on a table, an envelope containing marijuana atop a kitchen cabinet, and a vial containing 310 tablets on a closet shelf. The police also seized heroin from the defendant's person. Rejecting his contention that the Government's evidence was insufficient to establish his possession of any of the drugs found in the apartment other than those actually removed from his pocket, we explained:

> This court has never held that nonexclusivity in the occupancy of the premises is fatal to the Government's cause, nor do we so rule today.... Where premises are shared by two or more persons, the situation obviously differs when, on the one hand, drugs are hidden and, on the other hand, the drugs are in open view.... In the first situation, there [is] nothing except the joint occupancy of the [premises] upon which an inference of possession could be based.... In the latter situation, however, knowledge of the presence of the drug is apparent, and that in combination with other circumstances may suffice to enable a finding that all had a measure of control over it. 581 F.2d at 884 and n.55.

Similarly, in *United States v. Davis*, 562 F.2d 681 (D.C.Cir.1977), the appellant, in an apartment he shared with a co-defendant, was arrested for possession of LSD which was found in the kitchen refrigerator. Notwithstanding joint occupancy and the fact that the LSD was not on appellant's person at the time of arrest, this Court held that:

> From their physical location in the apartment, the fact that both lived there and the other facts herein before stated, the jury could conclude that the ample quantities of ... drugs ... were known and equally accessible at the time to both

---

3. Lawson had been living with Miller in Miller's apartment for a year prior to arrest. (Tr. 41).

[persons] and that both were in a position to exercise dominion and control over these drugs. 562 F.2d at 685.

As in *Staten* and *Davis*, appellant Miller clearly had dominion and control over the marijuana seized in her apartment. The evidence was thus sufficient to sustain her conviction. Her appeal is accordingly dismissed.

### CONCLUSION

The respective convictions of appellants Lawson and Miller are affirmed and the case is remanded to the district court to determine the rightful owner of the $3,606.00 currently held as evidence in this case. Such determination need not be undertaken until there is no further need in any case for the money as evidence and all normal possibilities of further review of this judgment have been exhausted.

*Judgment accordingly.*